UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| PENNY PACLIK,<br><br>              Plaintiff,<br><br>   vs.<br><br>CIY FOODS, INC. and FRANK JACKMAN,<br><br>             Defendants. | 4:23-CV-04131-KES<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PACLIK'S MOTION FOR ATTORNEY'S FEES |

**BACKGROUND**

The clerk of courts entered a default judgment in favor of plaintiff, Penny Paclik. Docket 8 at 1. Paclik then moved for attorney's fees and taxes but did not supply sufficient details for the court to decide on the motion. Docket 13 at 1. This court then issued an order for more information regarding the number of hours worked, rates charged, and evidence relevant to a finding of reasonable fees. Docket 16 at 4. Paclik provided a Supplemental Brief in Support of Motion for Attorney's Fees and two affidavits from Lisa Prostrollo and Pamela Reiter. Dockets 17-19. After reviewing the submitted materials, the court issues the following order.

**DISCUSSION**

Federal Rule of Civil Procedure 54(d)(2) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2). "State law governs the availability of attorney fees in diversity cases where no conflicting federal statute or court

1

rule applies." *Ryan Data Exch., Ltd. v. Graco, Inc.*, 913 F.3d 726, 735 (8th Cir. 2019) (quoting *Burlington N. R.R. Co. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526, 534 (8th Cir. 2000)) (cleaned up). Under South Dakota law, "attorney fees may only be awarded by contract or when explicitly authorized by statute." *In re Estate of O'Keefe*, 583 N.W.2d 138, 142 (S.D. 1998) (quoting *Schuldies v. Miller*, 555 N.W.2d 90, 100 (S.D. 1996)). "[E]ven if no statute authorizes an award of attorneys' fees, 'they are recoverable if the parties' contract so provides.' " *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 800 N.W.2d 730, 737 (S.D. 2011) (quoting *Credit Collection Servs., Inc. v. Pesicka*, 721 N.W.2d 474, 477 (S.D. 2006)). Under South Dakota law, attorney's fees must be reasonable. *In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85, 98-99 (S.D. 2005). "The party requesting an award of attorneys' fees has the burden to show its basis by a preponderance of the evidence." *Arrowhead Ridge I,* 800 N.W.2d at 737.

Here, the clerk of courts entered default judgment in favor of Paclik based on a contract between Paclik and defendants. *See* Docket 12; Docket 16 at 2. This contract specifies "[i]f any payment obligation under the Note is not paid when due, the borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process." Docket 1-1 at 1. The contract also provides that the "Note shall be construed in accordance with the laws of the State of Minnesota." *Id.* at 2.

2

The first issue the court must address is whether all of Paclik's requested attorney's fees fall under the agreement. Second, the court must also ensure that the attorney's fees recoverable under the contract are nonetheless still reasonable under South Dakota law.

I.   **Whether the Requested Fees Fall Under the Contract**

To determine whether the fees requested by Paclik fall under the agreement, the court divides the hours requested into two categories: fees-for-fees, and time spent on default judgment. Paclik seeks to recover 7.2 hours spent preparing its motion for attorney's fees, commonly referred to as "fees-for-fees." *See State ex rel. Steffen v. Peterson*, 607 N.W.2d 262, 273 (S.D. 2000) (explaining fees-for-fees involve "[a]ctions for attorney fees incurred in obtaining attorney fees for an underlying action"); *see also* Docket 18-1 (3.7 hours); Docket 18-2 (3.5 hours). As for the time spent on the default judgment, Paclik's counsel conducted: "pre-litigation investigation and review; informal settlement attempts; researching applicable substantive Minnesota law; researching applicable Minnesota procedural law for serving process on Minnesota residents and entities; drafting and filing the pleadings; arranging for service of process; drafting the necessary options and supporting documents for entry of default, default judgment[.]" Docket 18 at 2-3.

A. **Fees-for-Fees**

To determine whether Paclik can recover fees-for-fees, the court must interpret the relevant contract provision that provides for the borrower's "promise[] to pay all costs of collection, including reasonable attorney fees."

3

Docket 1-1 at 1. Put differently, the issue here is whether the phrase "borrower promises to pay all costs of collection, including reasonable attorney's fees" includes not just the fees associated with the underlying motion for default judgment, but also the fees associated with obtaining attorney's fees.

The Eighth Circuit has recognized that "[f]ederal courts sitting in diversity apply the choice-of-law rules of the forum state." *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009). South Dakota courts honor contractual choice-of-law provisions unless they contravene South Dakota public policy. *See Dunes Hosp., LLC v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484, 488 (S.D. 2001). Here, the agreement provides that the "Note shall be construed in accordance with the laws of the State of Minnesota." Docket 1-1 at 2. Nothing about this agreement contravenes South Dakota public policy because South Dakota law and Minnesota's contract interpretation principles are identical. *Compare Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016), *with Powers v. Powers*, 974 N.W.2d 706, 713 (S.D. 2022). Thus, the contract will be interpreted under Minnesota law and the court will apply Minnesota's contract interpretation principles. *See Dunes Hosp.,* 623 N.W.2d at 488.

Minnesota courts "look to the language of the contract to determine the parties' intent." *Storms*, 883 N.W.2d at 776. "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). To discern intent, "[the court] look[s] to the language of the contract as a whole,

4

harmonizing all of its clauses." *Sawmill Golf Club, Inc. v. Ramsden*, 2023 WL 3580602, at *2 (Minn. Ct. App. 2023). "[The court is] to interpret a contract in such a way as to give meaning to all of its provisions." *Brookfield Trade Center, Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). "[W]hen a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364-65 (Minn. 2009).

Here, the contract provides that the "borrower promises to pay all costs of collection, including reasonable attorney fees[.]" Docket 1-1 at 1. The phrase "of collection" cabins the scope of "all costs," by clarifying that the costs must relate to the *collection* of the amount the borrower owes. *See id.* The court must give full effect to the phrase "of collection" because otherwise, the phrase "of collection" would be meaningless and Minnesota courts "attempt to avoid an interpretation of the contract that would render a provision meaningless." *See Harkins v. Grant Park Ass'n*, 972 N.W.2d 381, 387 (Minn. 2022). The phrase "of collection" makes all the difference here because of its allusion to the underlying loan agreement between parties. The breach of contract at issue resulting in the default judgment in this case was directly related to this loan agreement. Docket 1. In looking at the language of the loan agreement, the document provides the procedures for payment of the loan, identifies what constitutes a default, and articulates what the remedy would be in the event that a default occurs. Docket 1-1 at 1-2. These subsections indicate that the focus of the loan agreement is to create a procedure for collecting payments,

5

and what to do if payments are not made. *Id.* Thus, in context, costs "of collection" refer to the costs of collecting payment for the loan.

Time spent calculating and litigating the attorney's fees in relation to the breach of contract is *not* a cost "of collection." The fees-for-fees in this case are not aimed at collecting the amount that the borrower owes in the event of breach and are not included under the terms of the loan agreement. As a result, the plain language of the parties' contract does not encompass fees-for-fees. To allow collection of fees-for-fees would inappropriately "modify" the contract. *See Travertine Corp.,* 683 N.W.2d at 271. Thus, the court finds Paclik is not entitled to collecting such fees, and the court excludes fees Paclik requests for time spent litigating the attorney's fees motion.

Comparing the language in this contract with language in other contracts confirms this result. For example, in *Waverly at Las Olas Condo. Ass'n, Inc. v. Waverly Las Olas, LLC,* the court confronted a contract that provided an award of fees for "*any litigation* between the parties under this Agreement." 88 So. 3d 386, 387 (Fla. Dist. Ct. App. 2012) (emphasis added). The court noted that the prevailing assumption in Florida courts is to limit an attorney's fees award to time spent in litigating the entitlement to, but not the amount of, fees incurred. *Id.* at 389. The court further explained that the language of "any litigation" within the contractual provision was "broad enough to encompass fees incurred in litigating the amount of fees." *Id.* Unlike in *Waverly*, the contract in this instant case does not provide for the recovery of fees for "any litigation" but rather for "all costs *of collection." See id.; see also* Docket 1-1 at 1. As discussed

6

above, the phrase "of collection" narrows the contract's language, and the court may not ignore this difference.

    Although the court applies Minnesota's contract interpretation principles, the South Dakota Supreme Court's decision in *Peterson* also supports this interpretation. There, the court considered whether a statute warranted the additional disbursement of attorney's fees for obtaining attorney fees (fees-for-fees). *Peterson*, 607 N.W.2d at 273. After noting that the American Rule "characterizes fees-for-fees litigation as an issue separate and distinct from the underlying action," the court looked to whether the fees and expenses incurred in obtaining fees were in furtherance of the underlying claim. *Id.* at 274. The court also looked to the specific language of the statute, which is similar to the language in the Paclik agreement. *See id.* The statute provided, "[the prevailing party] shall be allowed the reasonable and necessary expenses he has *incurred in his defense*, including a reasonable attorney fee." *Id.* at 272 (quoting SDCL § 3-17-10) (emphasis added). The court noted that the statute only provided for expenses incurred in defense of the substantive issue. *Id.* at 274. The litigation pursued in obtaining attorney fees was not in furtherance of the underlying issue regarding a register of deeds. *See id.* Further, the fees that resulted from the attorney's fees litigation were also not derived from work completed on the underlying issue. *See id.* Thus, the court held that Peterson was not entitled to fees-for-fees under the statutory wording "which only provide[d] for expenses incurred in defense of the substantive issue." *Id.*

    The court recognizes that *Peterson* interpreted a statutory provision while

this instant case deals with a contractual provision. But this difference does not lead to a different result because the South Dakota Supreme Court interprets statutes similar to how the Minnesota Supreme Court interprets contracts. When interpreting statutes, the South Dakota Supreme Court "give[s] words their plain meaning and effect, and read statutes as a whole." *Ibrahim v. Dep't of Pub. Safety*, 956 N.W.2d 799, 803 (S.D. 2021) (quoting *State v. Bowers*, 915 N.W.2d 161, 166 (S.D. 2018)). Similarly, as noted above, when interpretating contracts, the Minnesota Supreme Court "interprets contracts in such a way as to give meaning to all of [their] provisions." *Brookfield Trade Center*, 584 N.W.2d at 394.

Because the South Dakota Supreme Court's method of interpreting statutes and the Minnesota Supreme Court's method of interpreting contracts are similar, and without clear authority to the contrary, the court interprets the similarly worded contract here consistent with the way the South Dakota Supreme Court interpreted the statute in *Peterson*.

Courts in other states have also denied awarding fees-for-fees in similarly worded contractual agreements. For example, applying New York law, the Southern District of New York confronted whether an agreement requiring the defendant to pay attorney's fees "for enforcement of this Guaranty or any of its terms" also required the defendant to pay fees-for-fees. *See KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 141 (S.D.N.Y. 2021). Observing the general rule that fees-for-fees are not recoverable unless expressly authorized, the court held that the agreement's language "did not

contemplate the payment of fees in connection with the collection of attorney's fees" because fees-for-fees are not fees spent enforcing the agreement or any of the agreement's terms. *See id.* at 141. Similarly here, the contract Paclik seeks to enforce allows for attorney's fees but only those associated with "collection." Docket 1-1 at 1. And like *KLS*, the court finds that under Minnesota's contract interpretation principles, fees-for-fees are only recoverable unless expressly authorized. *See also Pretka v. Kolter City Plaza II Inc.*, 2013 WL 12080754, at *1 (S.D. Fla. 2013) (holding under Florida law that the language in the contract – "litigation to enforce" – was narrower than language such as "any litigation" and did not encompass fees-for-fees). *See also Bettendorf Transfer, Inc. v. Madison Freight Sys., Inc.*, 664 N.W.2d 684, at *4 (Wis. Ct. App. 2003) (holding fees-for-fees not recoverable under contract allowing for attorney's fees because "[n]othing in the contract authorizes a fee award from the time spent litigating the dispute").

After considering the contract's text, the South Dakota Supreme Court's decision in an analogous context, and decisions from other states, the court finds that the contract here does not allow for recovery of fees-for-fees. Thus, the court strikes the 7.2 hours of fees Paclik requests for time spent litigating this attorney's fees motion. As a result, the adjusted total amount of attorney's fees, based solely on the hourly rates and the number of remaining hours, is $4,757.00.

### B. Remaining fees.

The remaining fees of $4,757.00 must still be reasonable under the contract's language. The contract does not define "reasonable," so the court looks to the Minnesota Supreme Court to guide its analysis on whether the resulting attorney's fees are reasonable under the language of the contract.

Under Minnesota law, to determine a reasonable fee, courts must first ascertain the number of adequately documented hours expended on the litigation and multiply such hours by a reasonable hourly rate. *Green v. BMW of N. Am. LLC,* 826 N.W.2d 530, 536 (Minn. 2013). A court then evaluates the overall reasonableness of the award by considering such factors as:

> [1] [T]he time and labor required; [2] the nature and difficulty of the responsibility assumed; [3] the amount involved and the results obtained; [4] the fees customarily charged for similar legal services; [5] the experience, reputation, and the ability of counsel; and [6] the fee arrangement existing between counsel and the client.

*Cnty. of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013).

### 1. Rates

Reasonable hourly fees typically vary based on the individual's position in the firm and their experience. *See Phenow v. Johnson, Rodenberg & Lauinger, PLLP,* 766 F.Supp.2d 955, 957-58 (D.Minn. 2011) (approving different rates for lead attorney and associate based on level of skill, experience, and reputation); *see also E&I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, 2023 WL 8809324, at *2 (D.S.D. 2023) (approving different rates based on role as a partner, associate, or paralegal). In evaluating the reasonableness of a party's requested hourly rates, the court may also consider the complexity of the issue

and whether the litigation at issue requires specialization. *See United States v. Boston Sci. Corp.*, 2021 WL 4030274, at *5 (D.Minn. 2021) (noting that the attorneys were "skilled and experienced at representing . . . a specialized area of practice" and a higher rate was warranted); *see also Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated"). For example, in a non-specialized breach of contract case, this court found $350 per hour for partners, $260 for associates, and $155 for paralegals reasonable. *See E&I Glob. Energy Servs.*, 2023 WL 8809324, at *2.

Here, similar to *E&I*, this case involves a "breach of contract action litigated to a default judgment." Docket 17 at 2. Paclik requests rates similar to the rates the court approved in *E&I*: $325 per hour for Lisa Prostrollo (partner), $260 per hour for Christopher Sommers (associate), and $115 per hour for Sarah Havlin (paralegal). *Id.* at 1. Prostrollo has roughly 11 years of experience litigating civil cases. *Id.* at 3. Based on this experience and the similar rates awarded in *E&I*, the court finds these hourly rates are reasonable.

Paclik's affidavit of Pamela Reiter confirms the reasonableness of Paclik's request. Reiter is a partner of Reiter Law Firm, LLC., with 29 years of various experience including "litigating trust, estate, partnership, breach of contract and other disputes, as well as other complex civil matters including constitutional violations." Docket 19 at 1-2. As a partner, Reiter charges an hourly rate for breach of contract litigation between $400-$450. *Id.* at 2. Prostrollo's $325 hourly rate is significantly less than Reiter's rate, which is

11

consistent with their respective years of experience in the legal profession. Reiter also attests that Prostrollo's rate of "$350 per hour is reasonable and in line with the market rate for attorneys in Sioux Falls, South Dakota with similar experience in civil litigation." *Id.* In short, Paclik has met its burden to show the rates it has requested are reasonable.

### 2. Hours

In deciding a reasonable amount of time to spend on securing a default judgment, the court notes the District of Minnesota, applying Minnesota law, found 61.5 hours was reasonable to "to file a complaint, respond to counterclaims, perform preliminary discovery, respond to [the opposition's] motion to stay the case, and move for default judgment." *See Stewart v. Golden Victory Med. LLC,* 2024 WL 1285920, at *10 (D. Minn. 2024). Here, excluding the 7.2 hours requested for fees-on-fees, Paclik's counsel is seeking compensation for 17.2 hours, which is 8.4 hours by Lisa Prostrollo, 7.0 hours by Christopher Sommers, and 1.8 hours by Sarah Havlin. *See* Docket 15-1; Docket 15-2; Docket 15-3; Docket 15-4; Docket 15-5. The individuals here performed similar work, though not as much, as the attorneys in *Stewart*. Specifically, Paclik's counsel conducted: "pre-litigation investigation and review; informal settlement attempts; researching applicable substantive Minnesota law; researching applicable Minnesota procedural law for serving process on Minnesota residents and entities; drafting and filing the pleadings; arranging for service of process; drafting the necessary options and supporting documents for entry of default, default judgment[.]" Docket 18 at 2-3. Although

12

the lawyers in *Stewart* litigated a motion to stay unlike Paclik's lawyers, which explains why the total hours requested in *Stewart* is significantly more than Paclik requests, the court still finds the number of hours Paclik requests for the above work is reasonable, and thus allotted under the contractual language. *Stewart* 2024 WL 1285920, at *10.

### 3. Other Factors

As noted above, once the court deems the hourly rate and number of hours worked to be reasonable, the court looks to a variety of factors to evaluate the overall reasonableness of the award. *Cnty. of Dakota*, 839 N.W.2d at 711. These factors include: [1] the time and labor required; [2] the nature and difficulty of the responsibility assumed; [3] the amount involved and the results obtained; [4] the fees customarily charged for similar legal services; [5] the experience, reputation, and the ability of counsel; and [6] the fee arrangement existing between counsel and the client. *Id.*

The court finds that the first factor does not affect the rate because a breach of contract resulting in a default judgment is relatively simple for an attorney with this amount of experience. For the second factor, the court recognizes that the breach of contract contained a promissory note governed by Minnesota law which required more research to be completed by Paclik's legal staff. Docket 18 at 2-3. But this additional research does not justify an increase in the hourly rate. With respect to the third factor, the clerk of courts entered default judgment against defendants for $212,028.40, and post judgment interest. Docket 12 at 1. These results are not atypical and so do not

13

require an adjustment. With respect to the fourth factor, fees customarily charged in this locality for similar services were discussed above and were found to be in line with those charged here. The court also received Reiter's affidavit. Reiter, who works in a comparable specialty area and similar levels of experience, attested that "Attorney Prostrollo's hourly rate of $325 per hour is reasonable and in line with the market rate for attorneys in Sioux Falls, South Dakota with a similar experience in civil litigation." Docket 19 at 2. As for the fifth factor, as stated above, Prostrollo has 11 years of civil litigation experience, which the court already considered in determining whether Prostrollo's rates were reasonable. Docket 17 at 3. Lastly, the fees are calculated from a fixed hourly rate. Affidavits from Prostrollo and Reiter indicate that a fixed hourly rate is typical for civil litigation and breach of contract actions. Docket 18 at 2; Docket 19 at 2. Thus, this factor does not require an adjustment. *See City of Minnetonka v. Carlson,* 298 N.W.2d 763, 767 (Minn. 1980) (finding that a contingency fee was the "normal arrangement" for the type of case and did not require enhancement). In short, considering these factors, the attorney's fees requested do not require enhancement and are "reasonable" under the agreement.

II. **Whether Fees that Fall Under the Contract are Reasonable as a Matter of South Dakota Law**

Up to this point, the court finds that the attorney's fees that Paclik requests based off the underlying default judgment issue fall within the parties' agreement. But if the agreement authorizes such fees, South Dakota law requires they still be reasonable. *See In re S.D. Microsoft Antitrust Litig.,* 707

14

N.W.2d at 98-99. To determine whether an amount of attorney's fees is reasonable, South Dakota courts employ a nearly identical method to the one Minnesota courts use. *Compare, id.* at 99, *with, Green,* 826 N.W.2d at 536. For example, both courts begin with determining a reasonable rate and reasonable number of hours. *See In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d at 99; *Green,* 826 N.W.2d at 536.

After determining the reasonable hourly fee and reasonable number of hours worked, the South Dakota Supreme Court turns to whether to adjust the amount of attorney's fees and costs based on the following factors:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 111 (S.D. 1994).

When comparing these factors to the Minnesota factors addressed above, the court finds that they are similar in nature. After incorporating the above analysis, the court need only address the additional second, fifth, and sixth factors. The second factor does not affect the rate because Prostrollo spent under 11 hours working on this case, so it is unlikely that acceptance of this case interfered with her ability to work on other cases/matters. Docket 17 at 1. The record does not show how factor five is particularly pertinent, and thus it

15

does not alter the court's calculation. As for the sixth factor, the firm (Prostrollo specifically) has represented Paclik since 2012, which supports the amount requested because they have a longstanding relationship spanning over a decade. Docket 18 at 3. This relationship indicates that Paclik and her counsel have reached an understanding regarding fees. Thus, after considering all of the South Dakota factors, the court finds the requested amount of $4,757.00 is reasonable under South Dakota law.

## CONCLUSION

For these reasons it is ORDERED that

1) Paclik's motion for $6,766.00 worth of attorney's fees is GRANTED IN PART AND DENIED IN PART.

2) That Judgment will be entered in favor of Paclik in the amount of $4,757.00 plus sales tax in the amount of $294.93.

Dated July 29, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE